UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES F. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1168 (RBW) |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the defendants' motion to dismiss.  For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

*A.  Educational Good Time Credits*

In his original complaint, the plaintiff brings this civil rights action against the United States, the Federal Bureau of Prisons ("BOP") and its Director, Harley Lappin, for having allegedly violated his rights guaranteed under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[1]  *See* Complaint ("Compl.") at 1-2.

---

[1]  The plaintiff also appears to allege that the defendants violated 18 U.S.C. §§ 241, 242 (2000).  *See* Compl. at 2.  There is no private cause of action, however, under these criminal statutes.  *See Rockefeller v. United States Court of Appeals Office, for the Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (dismissing claims under 18 U.S.C. §§ 113, 211, 241 and 1583 because "[s]uch criminal offense provisions do not create a private cause of action); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996) (explicitly holding that 18 U.S.C. § 241 does not create a private cause of action), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997) (per curiam); *Figueroa v. Clark*, 810 F. Supp. 613, 615 (E.D. Pa. 1992) (dismissing as frivolous claims alleging that the

(continued...)

1

Without articulating what these rights are, the plaintiff alleges that these defendants "deliberately injured [him] when they failed to apply his District of Columbia earned good time educational credits in the sum totaling 78 days" as required under District of Columbia law.[2]  *Id.* at 3. Second, the plaintiff asserts "the right to be compensated for this injury, an [sic] "direct infringement upon his freedom and protected liberty interest," *id.* at 4, and demands an award of compensatory damages both from the defendants named in this civil action and from the defendants named in a civil action previously filed in the United States District Court for the District of New Jersey.  *Id.* at 5; *see Johnson v. Samuels*, No. 06-2233 (NLH), 2007 WL 1575076 (D.N.J. May 30, 2007).

### B. Parole Revocation, Release and Halfway House Placement

According to the plaintiff's pleadings, he was released on parole on or about October 23, 2003, and parole was revoked in August 2005.  See Amended Complaint ("Amd. Compl.") at 3.  After serving a parole violator term, the plaintiff was scheduled for release on or about October 10, 2006 and was to be placed in a halfway house.  *See id.* at 4.  It appears that the

---

[1](...continued)
defendants violated 18 U.S.C. §§ 241-42 because the plaintiff "cannot bring criminal charges against the defendants through a private lawsuit, and these sections do not give rise to a civil cause of action").  Therefore, these claims must be dismissed.

[2]     Attached to the plaintiff's Complaint is a document titled, "Sentence Monitoring Good Time Data as of 10-10-2003" dated July 6, 2006.  *See* Compl., Attach. (unnumbered).  In a section on the document titled "Extra Good Time DC Education Credit Awards" are two entries totalling 78 days' education credits and a notation stating that the "comp[utation] belongs to a prior commitment – released 10-10-2003."  These entries appear to be consistent with representations made to the United States District Court for the District of New Jersey.  *See Johnson v. Samuels*, No. 06-2233 (NLH), 2007 WL 1575076, at *1 (D.N.J. May 30, 2007).  In addition, the defendants submit a Sentence Monitoring Report reflecting "extra good time (EGT) entries as of 12-28-2007" totalling 78 days.  Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss, Ex. 1.

2

plaintiff's release was delayed by several months for two reasons. First, it appears that the United States Parole Commission ("Parole Commission") delayed his parole as a result of a disciplinary infraction the plaintiff had committed (Interference with Staff in the Performance of their Duties, Most Like Insolence) while incarcerated at FCI Fort Dix.[3] *See id.*, Attach. (April 13, 2007 Notice of Action on Appeal). The plaintiff's parole effective date was rescheduled for August 16, 2007, *id.*, and the Parole Commission directed that the plaintiff be placed in a halfway house for 120 days after his release. *Id.*, Attach. (July 12, 2007 Notice of Action) at 1. A second reason for the plaintiff's delayed parole release appears to be a lack of bed space at a halfway house in the District of Columbia equipped to handle his physical limitations and status as a sex offender. *See id*. at 4-6.

The plaintiff alleges that defendant Brunson, the Chairman of the United States Parole Commission, acted "in concert with other members of the . . . Parole Commission to deprive [him] of his protected and earned [] liberty interest, of freedoms as he was officially released upon an [sic] grant of parole on or about October 23, 2003, and remained so until such times as on or about August, 2005." Amd. Compl. at 3. Construing the plaintiff's pleading liberally, the Court discerns a claim against the Chairman in his individual and official capacities arising from what the plaintiff characterizes as an unlawful revocation of his parole in 2005 resulting in his service of a parole violator term of unspecified duration. In addition, the plaintiff appears to

---

[3] The National Appeals Board found that the plaintiff had written a letter "to a professional counselor [which] included puerile sexual references that a reasonable person would find offensive." Amd. Compl., Attach. (April 13, 2007 Notice of Action on Appeal) at 1. At that time, the plaintiff was "in custody for parole violations involving repeated instances of having unauthorized contact with minors." *Id.* Because of the plaintiff's "previous conviction for rape, a history of being insolent with institutional staff, and additional time . . . needed for release planning," a decision outside the guideline range of 0-60 days was warranted. *Id.*

allege that the Chairman either rescinded a grant of parole or otherwise delayed the plaintiff's release on parole, and after his release, denied the plaintiff "urgen[t]ly needed health procedures" due to his handicap, medical impairment, and age.  *See id.*

The plaintiff alleges that defendant Lappin "conspire[d] to defraud the government of bed space for D.C. offenders being released from custody by not placing them in community corrections centers (halfway house/CCC)[,] transitional houses, and or D.C. shelters for those elderly D.C. prisoners being 'eligible' for release."  Amd. Compl. at 3.  According to the plaintiff, defendant Buggs, the BOP official responsible for halfway house placements for District of Columbia offenders, "conspire[d] to deprive this [plaintiff] of his properly approved placements in a[] D.C. approved community corrections center, [or] D.C. approved homeless shelter, D.C. approved home detention plan."  *Id.* at 4.  The Court presumes that the plaintiff sues these defendants both in their individual and official capacities.

The plaintiff alleges that defendant Ferrell, Director of an organization the plaintiff calls "EFFORTS from Ex-Convicts, Inc.," wrongfully denied him a placement at its halfway house, in spite of its capacity to house sex offenders and its literature suggesting that it is "always . . . in the position to accept persons whom request sheltering because of homelessness."  Amd. Compl. at 4.  In addition, the plaintiff alleges that defendant Ferrell "conspired to deprive this plaintiff of his e[x]pected liberties [] simply and solely because of his being medically handicapped."  *Id.* at 5.  Its halfway house, the plaintiff alleges, has not been remodeled "for the receiving of handicapped persons" in designated sleeping areas.  *Id.*

The plaintiff alleges that defendant Robinson, his Community Supervision Officer, and her supervisor, defendant Powell, both employees of the Court Services and Offender Supervision Agency ("CSOSA"), were responsible for preparing an acceptable release plan, and

"conspired with [defendants Buggs, Ferrell and Ordonez] to deprive [him] of his rights and privileges to be housed in the CCC, home detention, and . . . homeless ex-offender programs, all because of his ability to file and address public officials in the manners of discrimination, abuse, neglect, and constitutional violations imposed upon offenders." *Id.* at 6.  Specially, he alleges that these defendants had approved two placements, *see id.* & Attach. (July 26, 2007 letter from N.R. Robinson, approved by E. Powell, to J. Ordonez), yet caused the rescission of the plaintiff's parole by "sixty days because of no apparent reason." *Id.* at 5.

### D.  Medical Treatment

Generally, the plaintiff alleges that BOP employees Joseph, Miller, Wilkes and Whiget denied him proper treatment for various medical conditions, including "absesses [sic] about [his] rectal area," a "bad heart condition, [and] high blood pressure."  Amd. Compl. at 7.  This denial of medical treatment and prescription medications, the plaintiff asserts, "did cause [him] severe pain and hardships and fright for [his] life." *Id.*  He attributes the defendants' inaction to his "complain[ts] to the courts and others concerning the ill treatment[] [he] ha[s] received under the hands of these defendants." *Id.*  The plaintiff sues these defendants in both their official and individual capacities.  *Id.*

## II.  DISCUSSION[4]

### A.  *Motion to Dismiss Under Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. __, __, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The factual allegations of the complaint are presumed to be true and are construed liberally in the plaintiff's favor under this Rule.  *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2001).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief."  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65.  Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

---

[4]  The plaintiff's opposition to the defendants' motion to dismiss, although timely filed, fails to address the arguments set forth in the defendants' motion.  Where a party fails to oppose a motion, the Court may treat the motion as conceded.  *See* LCvR 7(b) (authorizing the Court to treat a motion as conceded if the opposing party fails to timely file a memorandum of points and authorities in opposition); *see also FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (treating plaintiff's summary judgment motion as conceded because defendant filed its opposition late); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (if "a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (citing *Bender*, 127 F.3d at 67-68).  Notwithstanding this obvious deficiency of the plaintiff's opposition, the Court will proceed with its analysis.

(even if doubtful in fact)." *Id*. at 1965 (citations omitted).

### 1. The Complaint Fails to State a Conspiracy Claim

The elements of civil conspiracy are "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Conclusory allegations of an agreement will not suffice. *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (mere allegation that defendants "agreed among themselves" to subject plaintiff to discriminatory acts, without alleging facts suggesting that the defendants were acting in concert in furtherance of a shared goal of discriminating against him not sufficient) (footnote and citations omitted); *Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing claim where plaintiff merely alleged that his former employer "colluded" with the Department of Education to keep him underemployed, without putting forth "any facts showing the existence or establishment of an agreement").

Here, the plaintiff's complaint alleges various conspiracies without specifying the factual bases for the allegations, rendering the defendants unable to prepare a proper defense to these claims. *See Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987); *Meyer v. Reno*, 911 F. Supp. 11, 15 (D.D.C. 1996). The plaintiff's conspiracy claims, therefore, must be dismissed.

### 2. The Plaintiff's Claims Regarding Educational Good Time Credit Are Barred

According to the plaintiff, the defendants failed to award him 78 days educational good time credit prior to his parole release in October 2003. Compl. at 3. The defendants' failure to award this credit was the subject of a habeas petition filed in the United States District Court for the District of New Jersey. *See Johnson*, 2007 WL 1575076, at *1. At that time, the plaintiff

had been returned to custody after the Parole Commission revoked his parole, imposed a parole violator term, and set a new presumptive parole date. *See id.* The respondents admitted "that the 78 days educational credit should have been applied to his earlier sentence, served from 1997 to 2003, before he initially was granted release on parole," but instead "applied [the 78 days] to his prior sentence's maximum release date." *Id.* The plaintiff argued that the 78 days should have been credited towards the parole violator term he then was serving, thus advancing his new presumptive parole date. *See id.* The New Jersey district court denied the petition because the plaintiff "fail[ed] to demonstrate how the Bureau of Prisons' calculation of his sentence violate[d] the Constitution or laws of the United States." *Id.* at 2. The court found that, under District of Columbia law, any credit earned prior to parole release cannot be applied to any term imposed following revocation of parole. *Id.* The court relied in part on D.C. Code § 24-406 (2001), which provides that, upon revocation of parole, a person "shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him *after* his return to custody." D.C. Code § 24-406(a).

      The defendants argue that the plaintiff's claim regarding the award of educational good time credit is barred under the doctrine of collateral estoppel, *i.e.*, issue preclusion. *See* Memorandum in Support of Defendants' Motion to Dismiss ("Defs.' Mot.") at 7-8. The Court agrees.

      Collateral estoppel bars the relitigation of issues previously tried and decided in a court of competent jurisdiction involving the same or, in some circumstances, different parties. *See Ashe v. Swenson*, 397 U.S. 436, 443-44 (1970)) (collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."). "The Supreme Court has

defined issue preclusion to mean that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)), *cert. denied*, 506 U.S. 1078 (1993). A prior decision precludes relitigation of an issue if three conditions are met: "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[;] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and] preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Id.* (citations omitted). Unfairness may result where, for example, "the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude." *Id.* (citations omitted). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

      The plaintiff already has challenged judicially the defendants' failure to apply 78 days' educational good time credit to the sentence served from 1997 until his parole release in 2003. The United States District Court for the District of New Jersey determined in that prior proceeding that any credit the plaintiff earned prior to his 2003 parole release cannot be applied to any term of detention served after parole is revoked. No fundamental unfairness is now occasioned by the earlier ruling and accordingly the issue is precluded by the doctrine of collateral estoppel and cannot be relitigated here.

As to the plaintiff's demands "to be compensated for . . . [the] direct infring[e]ment upon his freedom and protected liberty interest" allegedly resulting from the defendants' failure to apply 78 days educational good time credit to his parole violation sentence, Compl. at 4, he demands monetary damages for the 78 days spent time in custody beyond the date on which he should have been released on parole in 2003. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ for habeas corpus.

*Id.*, 512 U.S. at 486-87; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *accord White v. Bowie*, 194 F.3d 175 (D.C. Cir. 1999) (table). Thus, absent a showing that the plaintiff's conviction or sentence has been invalidated, or in this case, that his parole violator term has been invalidated, which is lacking here, the plaintiff cannot recover damages for the time period in question.

3. The Plaintiff Has No Constitutional Right to Parole Release or a Halfway House Placement

To the extent that the plaintiff asserts a constitutionally-protected liberty interest in parole release and placement in a halfway house, his claim fails. "[A] lawfully imprisoned convict's interest in the possibility of being released on parole prior to expiration of the term of his sentence does not entitle him to due process protection, absent the creation of a regulatory system giving him a right to claim parole release upon meeting certain conditions." *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) (summarizing the Supreme Court's holding in

*Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1 (1979)).  It has been established that District of Columbia prisoners do not have a constitutionally protected liberty interest in parole and therefore have no protections under the due process clause with respect to parole determinations or procedures.  *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-20 (D.C. Cir. 1996); *accord Blair-Bey v. Quick*, 151 F.3d 1036, 1047 (D.C. Cir. 1998); *Brandon v. District of Columbia Board of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987).  Nor does the plaintiff state a claim with respect to the rescission of parole.  He did not "acquire a liberty interest as a result of the initial order that granted him parole and that order was subject to rescission without affording him due process at any time prior to his release from custody."  *Cole v. Harrison*, 271 F. Supp. 2d 51, 53 (D.D.C. 2002) (citing *Jago v. Van Curen*, 454 U.S. 14, (1981)).

   Upon his release on parole, the plaintiff has no constitutionally protected right to a halfway house placement or home detention arrangement.  This conclusion correlates with the established principle that no prisoner has a protected interest in being designated to serve his sentence at any particular prison, facility, or jurisdiction.  *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (concluding that interstate prison transfer "does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself"); *Gambino v. Gerlinski*, 96 F. Supp. 2d 456, 459-60 (M.D. Pa. 2000) (holding that refusal to place a federal inmate in a halfway house prior to the expiration of his sentence pursuant to 18 U.S.C. § 3624(c) does not violate due process because the statute neither refers to mandatory procedures nor creates a liberty interest in halfway house placement), *aff'd*, 216 F.3d 1075 (3d Cir. 2000); *Pitts v. Meese*, 684 F. Supp. 303, 315 D.D.C. 1987) (finding no justifiable expectation that female inmates would be incarcerated in a facility in or near the District of Columbia), *aff'd sub nom. Pitts v.*

*Thornburgh*, 866 F.2d 1450 (D.C. Cir. 1989).  Moreover, the plaintiff fails to state a claim arising from a delay in his parole release.  "Simply because [the] [p]laintiff was denied placement in the community corrections program due to an insufficient number of beds does not equate to an atypical and significant hardship" worthy of constitutional protection.  *Ross v. Mr. Michaud Complete Bd. Members*, No. 07-cv-02433-BNB, 2008 WL 474282, at *2 (D. Colo. Feb. 15, 2008); *see Anton v. Getty*, 78 F.3d 393, 397 (8th Cir. 1996) (dismissing civil rights claims against case manager and his supervisors who requested a delay in the plaintiff's parole release where, because of the plaintiff's failure to submit an adequate release plan, "it would take 90 days" before he could be placed in a community corrections center).  Absent a constitutionally protected right to parole or a halfway house placement, the individual defendants named in this action cannot be held liable for these alleged deprivations.

4. The Complaint Fails to State a Claim Against Defendant Lappin In His Individual Capacity

As Director of the BOP, defendant Lappin has supervisory and oversight responsibility for the agency's activities.  The plaintiff does not allege defendant Lappin's personal involvement with any action giving rise to his claims.  It does not appear that defendant Lappin himself denied the plaintiff a halfway house placement or medical care or otherwise acted in his capacity as BOP's Director in a way that caused the plaintiff injury.  To the extent that the plaintiff's theory of the case is to hold Lappin liable for the unconstitutional acts of his subordinates, he cannot prevail.  Defendant Lappin's supervisory role as the BOP's Director does not render him personally liable for the alleged wrongful acts of the BOP's employees.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (*respondeat superior* liability cannot form the basis of liability for a § 1983 claim); *see also Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (a complaint naming Attorney General and the BOP Director

as defendants based on theory of *respondeat superior*, without allegations specifying their involvement in the case, do not state *Bivens*[5] claim against them); *Epps v. United States Attorney General*, 575 F. Supp. 2d 232, 239 (D.D.C. Sept.8, 2008) (citing *Marshall v. Reno*, 915 F. Supp. 426, 429-30 (D.D.C. 1996)) ("A superior official cannot be held liable under Section 1983 or *Bivens* for the constitutional torts of employees under him or her; the common law theory of respondeat superior does not pertain to the federal government in this context.").

5.  <u>Sovereign Immunity Bars the Plaintiff's Claims for Damages Against the United States, the BOP, CSOSA, and Defendants Brunson, Lappin, Joseph, Miller, Wilkes, Herbik,Whiget, Ordonez, and Buggs, Robinson and Powell in their Official Capacities</u>

It appears that the plaintiff brings constitutional claims for damages against defendants Brunson, Lappin, Joseph, Miller, Wilkes, Herbik, Whiget, Ordonez and Buggs in their official capacities. "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). The United States has not waived its sovereign immunity for constitutional tort claims. *See Fed. Deposit Ins. Corp. v. Meyer*, 510

---

[5] *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that plaintiff who sued federal agents in their individual capacities for making a warrantless entry of his apartment, searching his apartment, and arresting him on narcotics charges, stated a federal claim under the Fourth Amendment to the United States Constitution).

U.S. 471, 477 (1994) (holding that sovereign immunity precludes damage claims against the United States government for constitutional violations). In addition, sovereign immunity extends to governmental agencies such as the BOP and to their employees where such employees are sued in their official capacities. *See id.* at 483-86. Thus, absent a waiver of sovereign immunity, the plaintiff cannot prevail in his claims for damages against the BOP or CSOSA, or against any federal government official sued in his or her official capacity. *Meyer*; 510 U.S. at 475; *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("Despite its role in administering parole for D.C. Code offenders, the [Parole] Commission retains the immunity it is due as an arm of the federal sovereign."); *Clark v. Library of Congress*, 750 F.2d 89, 101-02 (D.C. Cir. 1984); *Meyer v. Reno*, 911 F. Supp. 11, 18 (D.D.C. 1996).

### B. Motion to Dismiss Under Rule 12(b)(2)

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, defendants Joseph, Miller, Wilkes, Herbik, Whiget, Ordonez and Buggs move to dismiss on the ground that the plaintiff has not established this court's personal jurisdiction over them.[6] *See* Defs.' Mot. at 8-

---

[6] These defendants, as well as defendants Robinson and Powell, also move to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure on the ground that personal service has not been effected properly. Defs.' Mot. at 18-19. This argument applies equally to defendant Ferrell. Review of the docket reflect that, notwithstanding the granting of the plaintiff's motion to amend the complaint, neither these defendants nor defendants Ferrell, Robinson, or Powell are listed as party defendants. Accordingly, it does not appear that Clerk of Court issued summonses for them.

Because the plaintiff is proceeding *pro se* and *in forma pauperis*, he relies on the Clerk of the Court and the United States Marshals Service to issue summonses and to serve process on his behalf. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(2). Generally, such a plaintiff is not penalized for errors or mistakes of court officers in effecting service of process. *See Mondy v. Secretary of the Army*, 845 F.2d 1051, 1060 (D.C. Cir. 1988) (MacKinnon, J. concurring). Accordingly, as to the defendants identified in this footnote, the Court will deny without prejudice their motion to dismiss for improper service of process. For purposes of this Memorandum Opinion, the Court presumes, without deciding, that all defendants have been

(continued...)

12.

A District of Columbia court may exercise personal jurisdiction over a person who is "domiciled in, organized under the laws of, or maintaining [a] principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422 (2001). Defendants Joseph, Miller, Wilkes, Herbik, Whiget, and Ordonez appear to be BOP employees who worked at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"). *See* Amd. Compl. at 2, 7. The plaintiff describes defendant Buggs as the Director of Community Corrections Centers and provides for her an address in Baltimore, Maryland. *See id.* at 2. It does not appear that any of these defendants are domiciled in or maintain a principal place of business in the District of Columbia over whom this Court may exercise jurisdiction under D.C. Code § 13-422.

The Court must engage in a two-part inquiry in order to determine whether it may exercise personal jurisdiction over a non-resident defendant. First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute. *See GTE New Media Serv., Inc. v. Bell South Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Second, the Court must determine whether the exercise of personal jurisdiction would comport with the requirements of due process. *Id.* (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)).

Under the District's long-arm statute, a District of Columbia court may exercise personal jurisdiction over a non-resident defendant who either (1) transacts any business in the District, (2) causes tortious injury in the District by an act or omission in the District, or (3) causes

[6](...continued)
served properly.

tortious injury in the District "by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."[7]  D.C. Code § 13-423(a) (2001).  The plaintiff bears the burden of establishing that personal jurisdiction under the long-arm statute exists "by demonstrating a factual basis for the exercise of such jurisdiction over the defendant."  *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 205 (D.D.C. 1993) (citing *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).  The plaintiff has not met his burden on this issue.

The plaintiff does not allege that these defendants transact any personal business in the District of Columbia.  Although persistent conduct undertaken in a person's individual capacity may constitute the transaction of business for purposes of the long-arm statute, *see Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990), the complaint, as amended, sets forth no allegations that these defendants have any personal connection with the District of Columbia.  The mere fact that defendants Joseph, Miller, Wilkes, Herbik, Whiget, and Ordonez are employees of the BOP and the BOP headquarters are located in the District of Columbia does not alone render them subject to suit in their individual capacities in the District of Columbia.  *See Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980) (absent minimum contacts other than those arising from federal employment, a court may not exercise personal jurisdiction over federal official in his individual capacity).  Nor does the plaintiff establish by defendant Buggs' apparent involvement with halfway house placements for District of Columbia Code offenders establish contacts in this forum sufficient to justify the exercise of personal jurisdiction over her.

---

[7]     The District's long-arm statute sets forth alternative bases for long-arm jurisdiction.  *See* D.C. Code § 13-423(a).  None of these alternatives is relevant in this case.

Finally, the complaint, as amended, alleges no facts to establish that the plaintiff suffered any injury in the District of Columbia. The actual injuries of which the plaintiff complains appear to have occurred prior to the plaintiff's release from BOP custody while incarcerated at FCI Fort Dix in New Jersey. Therefore, regardless of whether these defendants acted in or outside of the District of Columbia, the plaintiff does not appear to have suffered an injury here. Accordingly, the Court concludes that it lacks personal jurisdiction over defendants Joseph, Miller, Wilkes, Herbik, Whiget, Ordonez and Buggs in their individual capacities.

### III.  CONCLUSION

In summary, the Court concludes that plaintiff's complaint, as amended, fails to state conspiracy claims and constitutional claims regarding his parole release, parole rescission, and halfway house placement. In addition, the doctrine of collateral estoppel bars his claim regarding educational good time credit, and the plaintiff is not entitled to an award of damages for the defendants' alleged failure to credit the good time properly. Moreover, even if these claims were cognizable, sovereign immunity bars his claims against the United States, its agencies, and its officers and employees sued in their official capacities. Assuming, without deciding, that service of process were effected on the individual defendants in their individual capacities, the plaintiff's claims against defendant Lappin must be dismissed absent allegations of his direct involvement giving rise to the plaintiff's claims. Further, this Court lacks personal jurisdiction over defendants Joseph, Miller, Wilkes, Herbik, Whiget, Ordonez and Buggs in their individual capacities. For these reasons, the Court grants the defendants' motion to dismiss.

An Order consistent with this Memorandum Opinion will be issued separately on this same date.

/s/
REGGIE B. WALTON
United States District Judge

Date:  December 11, 2008